# EXHIBIT A

# CONFIDENTIAL SETTLEMENT AGREEMENT

This Confidential Settlement Agreement is entered into by and between Casey Weathers, Daran Penney, Jacob Vonbuskirk, Jeff Kopulos, and Robert A. Young (the "Named Plaintiffs"), and all other individuals who have opted into this lawsuit, including but not limited to Matthew Balcazar, Daniel May, Dawaine Penney, Adam Vogel, Dustin Weber, Chris Wells, and Karen Zarlengo (the "Opt-In Plaintiffs") (Named Plaintiffs and Opt-In Plaintiffs collectively "Plaintiffs"); and National Coatings II, Inc., d/b/a National Coatings, Inc. ("National Coatings"), Robert Forsman ("Forsman"), and Zebulon Hadley ("Hadley") (National Coatings, Forsman, and Hadley collectively the "Defendants") (Plaintiffs and Defendants collectively the "Parties"), in full settlement of the claims in the civil lawsuit titled *Casey Weathers, Daran Penney, Jacob Vonbuskirk, Jeff Kopulos, and Robert A. Young v. National Coatings II, Inc., d/b/a National Coatings, Inc., Robert Forsman, and Zebulon Hadley*, Case No. 1:18-cv-00151-JTN-ESC in the U.S. District Court for the Western District of Michigan ("the Lawsuit"), and in full settlement of any other claims that Plaintiffs have asserted or could have asserted against Defendants.

**WHEREAS**, Defendants expressly deny that they may be liable to Plaintiffs on any basis or that they have engaged in any improper or unlawful conduct or wrongdoing; and

**WHEREAS**, the Parties desire to resolve all matters arising out of Plaintiffs' claims rather than engage in protracted and expensive litigation;

**NOW THEREFORE**, in consideration of the promises and mutual agreements, covenants, and provisions contained in this Agreement, the Parties agree and declare as follows:

1. **Covered Entities:**

    (a)     "Plaintiff" or "Plaintiffs" means and includes all individuals identified in **Exhibit A** to this Agreement, including all Named Plaintiffs and Opt-In Plaintiffs, as well as their heirs, administrators, representatives, attorneys, executors, successors and assigns;

    (b)     "Defendants" means and includes National Coatings II, Inc. and all of its affiliated, parent, sister, or subsidiary organizations, all organizations under common control of any of them, all employee benefit plans sponsored, maintained or administered by any of those organizations, and their respective shareholders, members, owners, directors, officers, employees, representatives, attorneys, trustees, administrators, successors and assigns; Forsman and his heirs, administrators, representatives, attorneys, executors, successors and assigns; and Hadley and his heirs, administrators, representatives, attorneys, executors, successors and assigns.

2. **Dismissal:** The Parties will cooperate and take all necessary steps to effectuate final judicial approval of this Agreement. Within three (3) business days after this Agreement is signed by all Plaintiffs and all Defendants, the Parties will file a Joint Motion for Approval of the Settlement Agreement. Within three (3) business days after National Coatings' delivery of all Settlement Payments, provided the Court has approved the Confidential Settlement Agreement, the Parties will take the necessary steps to dismiss the Lawsuit with prejudice by stipulation. Plaintiffs and Plaintiffs' counsel hereby authorize National Coatings' counsel to sign and file such

Stipulation of Dismissal with Prejudice consistent with the terms of this Agreement, and the Parties authorize their attorneys to take all actions necessary to cause the Court to issue a final and binding order of dismissal. Plaintiffs' claims in the Lawsuit will be dismissed in their entirety, with prejudice and without any award of costs or fees to either party, except as otherwise provided in this Agreement.

3. **Settlement Payments:** National Coatings agrees to pay the gross sum of eighty-seven thousand five hundred dollars ($87,500) as described below in settlement of any and all claims Plaintiffs have asserted or could have asserted against Defendants, including any claims connected with their employment with National Coatings (the "Payments"). Provided that each of the Plaintiffs sign this Agreement and do not revoke their consent to this Agreement pursuant to Section 16, the Company will remit the Payments to Plaintiffs' counsel within fourteen (14) days after: (1) Defendants' receipt of proof of the signatures of all Plaintiffs on this Agreement; (2) Defendants' receipt of Internal Revenue Service ("I.R.S.") W-9 forms completed by Plaintiffs' counsel; (3) the entry of an order by the Court approving the Parties' Joint Motion for Approval of Settlement; and (4) Defendants' receipt of proof that all Plaintiffs identified in the Settlement Chart attached as **Exhibit A** have signed opt-in consent forms in the same form as Docket No. 7 to the Lawsuit, and have filed such opt-in consent forms in the Lawsuit.

4. **Method of Payment:** The Parties agree that the eighty-seven thousand five hundred dollars ($87,500) payment will be made via three separate checks, as follows:

(a) National Coatings will make a payment for the gross sum of fifty-seven thousand eight hundred and fifty-eight dollars and two cents ($57,858.02) paid collectively to Plaintiffs in compromise of their disputed claims asserted in the Lawsuit. This gross sum will be divided among the Plaintiffs, according to the allocations set by Plaintiffs and Plaintiffs' counsel, and such allocations will be paid via check/payment made payable to each of the individual Plaintiffs in the amounts listed in the Settlement Chart attached hereto as **Exhibit A** and incorporated by reference as though set forth fully herein, less all federal and state taxes and other required withholdings, for which the Company will issue each Plaintiff a Form W-2;

(b) A check/payment made payable to Smith Haughey Rice & Roegge, as Plaintiffs' counsel and in compromise of the Plaintiffs' disputed claim for attorney fees and costs, for the sum of fourteen thousand five hundred and eighty-one dollars and twenty-three cents ($14,581.23), which together with the payment referenced in Section 4(c) shall be inclusive of all claims for attorney's fees and/or costs and reported on an IRS Form 1099 issued to Smith Haughey Rice & Roegge, with all appropriate taxes to be paid by Smith Haughey Rice & Roegge;

(c) A check/payment made payable to Parker Harvey PLC, as Plaintiffs' counsel and in compromise of the Plaintiffs' disputed claim for attorney fees and costs, for the sum of fifteen thousand sixty dollars and seventy-six cents ($15,060.76), which together with the payment referenced in Section 4(b) shall be inclusive of all claims for attorney's fees and/or costs and reported on an IRS Form 1099 issued to Parker Harvey PLC, with all appropriate taxes to be paid by Parker Harvey PLC.

5. **Contingent on Settlement Approval:** This Confidential Settlement Agreement is contingent upon, and National Coatings shall have no obligation to pay the amounts in Section 4 of this Agreement unless, all Plaintiffs listed in the Settlement Chart: (1) sign this Confidential Settlement Agreement; (2) do not revoke their consent to this Confidential Settlement Agreement pursuant to Section 16 of this Agreement; and (3) sign and file opt-in consent forms joining this Lawsuit. Further, this Confidential Settlement Agreement is contingent upon, and National Coatings shall have no obligation to pay the amounts in Section 4 of this Agreement, unless the Court approves this Confidential Settlement Agreement and dismisses this case with prejudice.

6. **Tax Indemnification:** Plaintiffs agree and acknowledge that Defendants have not made any representations regarding the tax consequences of any funds received pursuant to this Agreement. Plaintiffs and Plaintiffs' counsel agree to pay any federal or state taxes which may be required by law to be paid with respect to this settlement and the Payments. Plaintiffs and Plaintiffs' counsel further agree to indemnify and hold Defendants harmless from any tax payments, interest, claims, demands, penalties, deficiencies, levies, assessments, executions, judgments, or recoveries by any entity against Defendants for any amounts claimed or due on account of this Agreement. However, plaintiffs will not indemnify defendants for any federal or state taxes which defendants are legally responsible to pay, such as payroll taxes.

7. **No Admission of Liability:** The Parties acknowledge that this Agreement represents the compromise of a disputed claim and that any claim of liability is denied. No term of this Agreement, nor any action taken by any party in connection with this Agreement, shall be interpreted to render any party a prevailing party for any reason, including but not limited to an award of attorney fees or costs.

8. **Confidentiality:**

(a) Neither Plaintiffs nor their attorneys (Anders J. Gillis, Andy Blodgett, Parker Harvey PLC, Matthew Wikander, Charissa Huang, or Smith Haughey Rice & Roegge) will disclose to any person or entity any term of this Agreement or any information concerning the Payments described in Sections 3 and 4, except that the Parties or their attorneys may state that the Lawsuit has been resolved by agreement of the parties and has been dismissed; provided, however, that Plaintiffs and their attorneys may disclose information related to this Agreement to (i) their legal and financial advisers, on a confidential basis; or (ii) as required by law or a court order, provided that Plaintiff (1) gives National Coatings written notice immediately upon receipt of notice of any request, demand or order for disclosure, and (2) reasonably cooperates with any lawful efforts by National Coatings to prevent, limit or object to the request, demand or order for disclosure. If any Plaintiff has any doubt whether a communication would violate this Section 8, they agree to seek clarification from National Coatings.

(b) National Coatings will not disclose to any person or entity any term of this Agreement or any information concerning the Payments described in Sections 3 and 4, except that National Coatings may disclose the terms of this Agreement to (i) members of its management staff who have a legitimate business need to know of its terms; (ii) its legal and financial advisers, on a confidential basis; (iii) as required by law or a court order; or (iv) in response to a request made or authorized by a government agency or accreditation agency.

3

**9.     Mutual Releases:**

(a)     Plaintiffs, for themselves, their heirs, personal representatives, successors, and assigns, release and forever discharge Defendants from any and all claims, allegations, causes of action, charges, suits, demands, injuries, losses, damages, attorney fees and costs, of every kind and nature, whether known or unknown, direct or indirect, accrued, contingent or potential, which Plaintiffs ever had or now have, from the beginning of time until the date Plaintiff signs this Agreement. This release includes, but is not limited to, any matters arising from or in any way related to Plaintiffs' employment with National Coatings, or their hours worked, wages, or overtime wages in connection with that employment. This release is intended as a general release and includes all claims whatsoever, whether based upon federal, state or local statutes, regulations, rules, or ordinances, the common law, or any other legal or equitable grounds, including but not limited to the Fair Labor Standards Act, 29 USC §§201 *et seq.*, and the Bullard-Plawecki Employee Right to Know Act, MCL 423.501 *et seq.* Plaintiffs acknowledge that this release applies both to known and unknown claims, whether foreseen or unforeseen, that may exist between Plaintiffs and Defendants. Plaintiffs expressly waive and relinquish all rights and benefits which they may have under any state or federal statute or common law principle that would otherwise limit the effect of this Agreement to claims known or suspected prior to the date Plaintiffs execute this Agreement, and do so understanding and acknowledging the significance and consequences of such specific waiver. Nothing in this Agreement extinguishes any claims Plaintiffs may have against Defendants for breach of this Agreement, or any claims arising from events that occur following the execution of this Agreement.

(b)     Defendants release and forever discharge Plaintiffs from any and all claims, allegations, causes of action, charges, suits, demands, injuries, losses, damages, attorney fees and costs, of every kind and nature, whether known or unknown, direct or indirect, accrued, contingent or potential, which Defendants ever had or now have, from the beginning of time until the date Defendants sign this Agreement. This release includes, but is not limited to, any matters arising from or in any way related to Plaintiffs' employment with National Coatings. This release is intended as a general release and includes all claims whatsoever, whether based upon federal, state or local statutes, regulations, rules, or ordinances, the common law, or any other legal or equitable grounds. Nothing in this Agreement extinguishes any claims Defendants may have against Plaintiffs for breach of this Agreement, or any claims arising from events that occur following the execution of this Agreement.

**10.    No Other Claims.** Plaintiffs represent that they have not filed any administrative or legal proceedings against Defendants other than the Lawsuit. Plaintiffs further understand that nothing in this Agreement prohibits them from filing a charge or a complaint with any federal, state or local government agency, or participating in any investigation or proceeding conducted by any such governmental agency. Further, nothing in this Agreement prohibits Plaintiffs from reporting possible violations of federal law or regulation to any governmental agency or entity, or making other disclosures that are protected under the whistleblower provisions of federal law or regulation. However, the Parties agree that Plaintiffs have released Defendants from any and all liability arising from all laws, statutes, and common law as referenced in this Agreement. As such, Plaintiffs are waiving any right to and will not be entitled to any monetary or other

comparable relief (including attorneys' fees and/or costs) on Plaintiffs own behalf resulting from any proceeding brought collectively or individually by Plaintiff or any other person or entity, including but not limited to any federal, state, or local agency.

11. **No Other Entitlements:** Except as expressly set forth in this Agreement, Plaintiffs acknowledge that they are not entitled to any other compensation, monies, or benefits from the Defendants, including but not limited to compensation for wages, bonuses, commissions, expenses, severance, or other forms of compensation or benefits, repayments of debts, or reimbursements of expenses, and Plaintiffs hereby release the Company of and from any obligations to make any other payment or provide any other benefit.

12. **No Future Employment:** Plaintiffs waive any right or claim for employment, rehire, reinstatement, recall, or instatement with National Coatings. Plaintiffs agree not to seek or apply in the future for employment at or with National Coatings. Plaintiffs also agree not to bring any suit or claim against National Coatings if they seek employment in the future with National Coatings and are denied such employment. Plaintiffs agree that this Agreement is a complete bar to their entitlement to any legal, equitable, or administrative relief based on denial of employment.

13. **Covenant Not to Sue:** Plaintiffs understand and acknowledge that this Agreement is intended to fully, completely, and forever resolve all disputes between them and Defendants based upon all events, omissions, or acts occurring on or prior to its execution. Plaintiffs further covenant and agree not to sue, or otherwise pursue or participate in litigation, alternative dispute resolution or any other means whatsoever, with respect to any of the claims released pursuant to this Agreement. The Parties agree that they will not directly or indirectly challenge any paragraph of this Agreement as invalid or unenforceable and will take no action contrary to any of its provisions other than as ordered by a court of law. In addition, in the event of Plaintiffs' breach of this Section, Defendants will be entitled to recover from the breaching party all Payments made to the breaching party except One Hundred Dollars ($100.00). Should either party breach the terms of this Section, the non-breaching party shall be entitled to recoup all legal fees and costs incurred in the enforcement of this Section.

14. **Non-Disparagement:** Plaintiffs and Defendants agree they will not denigrate, defame, disparage, or cast aspersions upon any other Party, its members, managers, officers, products, services, and/or manner of doing business; provided, however, that nothing in this Agreement prohibits a Party from providing truthful information and/or testimony in connection with any investigation or proceeding conducted by an applicable government agency or in connection with any legal proceeding. The Parties acknowledge and agree that no liability shall arise from breach of the covenants set out in this Section 14 for statements made prior to the date of this Agreement. For the purposes of this Section 14, National Coatings' obligations shall apply only to the following individuals: Forsman and Hadley.

15. **Jeff Kopulos Unemployment Compensation Claim:** The following Section 15 applies solely to Plaintiff Jeff Kopulos ("Kopulos"). In consideration for the mutual promises and covenants contained in this Agreement, Defendants agree that Kopulos retains his right to pursue his pending claim and appeal for unemployment benefits, Claim No. C4533515-0. Defendants further agree that they will not challenge Kopulos' claim or appeal, and that within seven (7) days after the Court grants the Parties' Joint Motion for Approval of Settlement, National Coatings will

deliver a letter to the Michigan Department of Talent and Economic Development stating that National Coatings is "no longer contesting Kopulos' unemployment compensation claim," or words to similar effect. The Parties acknowledge that Defendants are not responsible for and cannot control any agency's determination as to whether Kopulos is entitled to unemployment compensation or the amount of any such compensation.

**16.    Knowing and Voluntary Waiver:** The following Section 16 applies solely to Plaintiffs Jeff Kopulos, Daniel May, Daran Penney, Dawaine Penney, Chris Wells, and Karen Zarlengo. Pursuant to the provisions of the Older Workers' Benefit Protection Act, Plaintiffs Jeff Kopulos, Daniel May, Daran Penney, Dawaine Penney, Chris Wells, and Karen Zarlengo expressly acknowledge:

(a)   that they are waiving all rights and claims they have or may have under the Age Discrimination in Employment Act, 29 U.S.C. Section 626, et seq., and any other federal, state, or municipal law or regulation relating to age discrimination;

(b)   that they are aware they are not waiving any rights or claims that may arise after the date this Agreement is executed;

(c)   that the terms of this Agreement provide consideration to that they would not otherwise be entitled to;

(d)   that this Agreement is written in a manner that they can understand and that they have, in fact, read and understand it;

(e)   that they are hereby advised in writing to consult with an attorney before executing this Agreement;

(f)   that they are hereby advised that they may take up to 21 days from the date they receive a copy of this Agreement within which to consider whether to sign it, and that signing this Agreement in less than 21 days is a voluntary election to forego waiting the full 21-day period;

(g)   that they may revoke this Agreement after signing it at any time within 7 days thereafter; that the Agreement shall not become effective or enforceable until the 7-day revocation period has expired; that any such revocation must be made personally via a written notice of revocation either hand delivered or sent via facsimile to:

T. Cullen Stafford<br>
Wyrick Robbins Yates & Ponton LLP<br>
4101 Lake Boone Trail, Suite 300<br>
Raleigh, NC 27607<br>
Fax: (919) 781-4865

and that, if not revoked before the expiration of this 7-day revocation period, the Agreement will become irrevocably effective upon the eighth (8th) day following the date this Agreement is signed; and

(h)   that they have entered into this Agreement knowingly and voluntarily.

17. **Miscellaneous:**

    (a)    This Agreement is a contract between the Parties and not merely a recital. Should any of the Parties breach any term of this Agreement, the party in breach will be liable to the other party for reasonable attorneys' fees and costs incurred in attempting to enforce the terms of the Agreement.

    (b)    The Parties agree that each party will bear its own attorney's fees, costs and expenses, except as otherwise provided in this Agreement.

    (c)    The terms of this Agreement contain the entire understanding of the Parties with respect to its stated subject matter. There are no representations, warranties, covenants or undertakings, oral or otherwise, that are not expressly set forth herein. The Parties further represent that no statements have been made outside this Agreement itself on which any of the Parties have in any way relied.

    (d)    No modification of this Agreement is valid unless executed in writing with the same formality as this present Agreement and by the same Parties.

    (e)    If any Court shall subsequently deem any portion of this Agreement to be invalid, such designation shall not affect the remaining provisions of this Agreement, which will continue in full force and effect.

    (f)    This Agreement is binding upon the Parties hereto, their respective affiliates, divisions, subsidiaries, shareholders, officers, directors, agents, representatives, attorneys, successors, assigns, heirs, executors and administrators.

    (g)    The laws of the State of Michigan shall govern this Agreement. The state or federal courts of the state of Michigan shall be the exclusive venue for any litigation arising as a result of this Agreement, and Plaintiffs consent to personal jurisdiction and venue in the state and federal courts of the State of Michigan.

    (h)    The section headings in this Agreement are inserted for convenience only and are not intended to affect the interpretation of this Agreement. Any reference in this Agreement to any Section refers to the corresponding Section of this Agreement. The word "including" in this Agreement means "including without limitation." This Agreement will be construed as if drafted jointly by both Plaintiffs and Defendants and no presumption or burden of proof will arise favoring or disfavoring Plaintiffs or Defendants by virtue of the authorship of any provision in this Agreement. All words in this Agreement will be construed to be of such gender or number as the circumstances require.

    (i)    This Agreement may be executed in one or more counterparts, each of which will be deemed an original but all of which together will constitute one and the same agreement. Counterparts of this Agreement may be transmitted and/or signed by facsimile or electronic mail. The effectiveness of any such documents and signatures shall have the same force and effect as manually signed originals and shall be binding on the Parties to the same extent as a manually signed original thereof. The Agreement will be deemed to be fully signed once each party has signed one or more counterparts.

(j)   The signatories hereto represent that they are duly authorized to enter into this Agreement as set forth below and that their signature is binding upon the party on whose behalf they sign.

IN WITNESS WHEREOF, the parties have executed this Agreement on the dates indicated at their respective signatures below.

**National Coatings II, Inc.**

_____

Title: _____

Date: March ___, 2018

| **Robert Forsman** | **Zebulon Hadley** |
|---|---|
| _____ | _____ |
| Date: March ___, 2018 | Date: March ___, 2018 |

| **Smith Haughey Rice & Roegge**<br>Attorneys for Plaintiffs | **Parker Harvey PLC**<br>Attorneys for Plaintiffs |
|---|---|
| _____ | _____ |
| Date: March ___, 2018 | Date: March ___, 2018 |

**Casey Weathers**

_____

Date: March ___, 2018

8

**Jacob Vonbuskirk**

_____

Date: March \_\_\_, 2018

**Daran Penney**

_____

Date: March \_\_\_, 2018

**Jeff Kopulos**

_____

Date: March \_\_\_, 2018

**Robert A. Young**

_____

Date: March \_\_\_, 2018

**Matthew Balcazar**

_____

Date: March \_\_\_, 2018

**Daniel May**

_____

Date: March ___, 2018

**Dawaine Penney**

_____

Date: March ___, 2018

**Adam Vogel**

_____

Date: March ___, 2018

**Dustin Weber**

_____

Date: March ___, 2018

**Chris Wells**

_____

Date: March ___, 2018

**Karen Zarlengo**

_____

Date: March ___, 2018

## Confidential Settlement Agreement – Exhibit A

| Name | Amount |
|---|---|
| Balcazar, Matthew | $5,000.00 |
| Kopulos, Jeff | $7,000.82 |
| May, Daniel | $3,008.62 |
| Penney, Daran | $10,663.11 |
| Penney, Dawaine | $462.86 |
| Vogel, Adam | $1,000.00 |
| VonBuskirk, Jacob | $5,727.94 |
| Weathers, Casey | $5,207.22 |
| Weber, Dustin | $7,000.82 |
| Wells, Chris | $3,471.48 |
| Young, Robert | $7,000.82 |
| Zarlengo, Karen | $2,314.32 |

**Smith Haughey Rice & Roegge**
Attorneys for Plaintiffs

_____

Date: March ___, 2018

**Parker Harvey PLC**
Attorneys for Plaintiffs

_____

Date: March ___, 2018

**National Coatings II Inc.**

By: _____

Title: _____

Date: March ___, 2018

**Robert Forsman**

_____

Date: March ___, 2018

**Zebulon Hadley**

_____

Date: March ___, 2018